This is a case of first impression in that heretofore this Court has not been asked to interpret § 35-6-100, et seq. (Act No. 79-334, §§ 1, 2, 3, 4, and 5, 1979 Acts of Alabama, V. I, p. 532). Act No. 79-334 became effective July 17, 1979. Section 1 (§ 35-6-100, Ala. Code 1975), provides:
 "Upon the filing of any petition for a sale for division of any property, real or personal, held by joint owners or tenants in common, the court shall provide for the purchase of the interests of the joint owners or tenants in common filing for the petition or any others named therein *Page 185 
who agree to the sale by the other joint owners or tenants in common or any one of them. Provided that the joint owners or tenants in common interested in purchasing such interests shall notify the court of same not later than ten (10) days prior to the date set for trial of the case and shall be allowed to purchase whether default has been entered against them or not."
Before we address the specific issue being presented, a basic understanding of the statute itself will be helpful. While the Act, particularly § 1, which is codified as § 35-6-100, is inartfully drafted, the purpose of its provisions is readily discernible. The prior statutory scheme, as judicially interpreted (exemplified by English v. Brantley, 361 So.2d 549
(Ala. 1978)), hampered the efforts of nonconsenting interest holders, in partition proceedings under § 35-6-20, to preserve estates.
This deficiency can be dramatized by a simple, and ofttimes repeated, example: Suppose six children of intestate parents wish to preserve the family property intact, but the seventh child wants his share of the inheritance. By invoking §35-6-20, he can enforce either a partition in kind or a sale of the whole and division of the proceeds. Except in the rarest of circumstances which permit judicial equitable partition, the usual end result of such proceedings is the passing of title to a stranger.
This amendment to the partition statute engrafts a viable option whereby, in the given example, the six nonconsenting children, upon compliance with the prescribed notice, may invoke the authority of the court to purchase the interest of the petitioner. The key words are "the court shall provide for the purchase [of the petitioner's interest] by the other joint owners . . ."
Admittedly, § 35-6-100 is not a model of draftsmanship. Initially, it inadvertently speaks only of "the filing of any petition for a sale for division," when, obviously, it means to address the procedure authorized by § 35-6-20, et seq., for partition or sale for division.[1] This technical inaccuracy is of no material consequence. Likewise, the term "filing for the petition," though an inapt phrase, is self-correcting, and should be construed to read "filing the petition for relief." Furthermore, this first sentence of § 35-6-100 could be grammatically improved, and thus made clearer, by setting off with commas the phrase ". . . or any others named therein who agree to the sale. . . ."
From a more substantive point of view, we should also observe that the amended statutory scheme is no "cure all." In the hypothetical situation used above, if less than all of the nonconsenting defendants agree to purchase the plaintiff's interest, the invocation of this statute would result only in a consolidation of certain interests which, of itself, would not avoid the subsequent operative effect of the already existing statutory procedure. Indeed, the facts of the instant case (even assuming the Appellant Ragland could have raised the purchase money) is illustrative of this very point. The remaining nonconsenting owners could insist, first, upon partition in kind, or, failing that, upon sale for division for the proceeds.
The subject property in this case was owned by Sallie Ragland, consisted of several noncontiguous tracts, and was left by her to her heirs-at-law. Twenty-four heirs, with interests ranging from one-eighth (1/8) to one three-hundred-twentieth (1/320), and three other persons with dower interests, are involved.
Looking to § 35-6-100, the trial Court granted Appellant Ragland's request to purchase the interests of Plaintiffs and of any Defendants who wished to sell. This order provided in the alternative for the sale of the land at public auction thirty days after the date of the order in the event Ragland failed to purchase the property. The proceeds of such public sale were to be *Page 186 
divided among the heirs according to the interest of each. Ragland failed to raise the purchase money, thus triggering the alternative provision of the order-sale.
Our review of the record shows that the evidence before the trial Court was confined to the identity of the heirs, the amount of their interests, the fair market value of the property, and the amount of attorneys' fees. The issue before this Court thus becomes the propriety of the trial Court's decision that the land could not be equitably partitioned and therefore must be sold. We find there was no evidence taken on the issue, and the record contains no stipulation concerning this point.
It is contended by Appellees that Roderick Ragland waived his right to object to sale and division of proceeds by invoking §35-6-100, and offering to buy. In view of the specific denial in his answer that the land could not be equitably partitioned, we find that the offer to buy did not constitute a waiver of rights concerning the remedy of partition. Moreover, such an offer by one Defendant could not compromise the rights of the others to pursue the remedy of partition. Only the three minor Defendants, through their guardians ad litem, elected to have their interests purchased by Roderick Ragland. The remaining Defendants in no way acquiesced to a sale. In fact, Appellant Daisy Eston made specific written objection to the order of public sale.
Given this failure to consummate the sale under the provisions of § 35-6-100, we look to other available relief. In this situation, § 35-6-103 refers the trial Court "to its traditional practices." For guidance concerning these traditional practices, we turn to § 35-6-20, which has been on the books since 1886, and to the case law developed thereunder.
This Court, in Roper v. Belk, 276 Ala. 370, 162 So.2d 465
(1964), gives a good synopsis of the law on this point, saying:
 "Partition of land between joint owners or tenants in common is a matter of right, but the alternative right to have land sold for division is statutory, and is conditioned upon averment and proof that the property cannot be equitably divided or partitioned among them. When this condition appears, the right to sell for division is a matter of right, but if this condition is not proven, no sale for division should be ordered. Leonard v. Meadows, 264 Ala. 484, 88 So.2d 775; Meador v. Meador, 255 Ala. 688, 54 So.2d 546; Hall v. Hall, 250 Ala. 702, 35 So.2d 681; Tit. 47, §§ 186, 210, Code 1940."
See, also, Wood v. Barnett, 208 Ala. 295, 94 So. 338 (1922). The trial court cannot make a finding that partition is not possible without some evidence before it concerning that issue.
The judgment below is hereby reversed and the cause is remanded for further consideration in accordance with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, FAULKNER, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
BLOODWORTH, J., not sitting.
[1] It is interesting to note that the publishers of the Code had no apparent difficulty in codifying Act No. 79-334 as Art. 4A under T. 35, Chapter 6, "Partition," and subtitling Art. 4A, "Purchase of Interest of Joint Owner Filing for Partition."