This appeal arises from an action brought by appellees for the sale of real estate for division of the proceeds. The interests of all parties in the property are derived from James L. McGee, who died about 1929. The property has been owned by family members since the death of James L. McGee. Defendant-appellant, Ralph McGee, is the sole surviving child of James L. McGee. The plaintiffs-appellees are grandchildren and great-grandchildren of James L. McGee, except Nellie C. McGee, who is the widow of a son of James L. McGee.
The complaint alleged that the property could not be equitably partitioned and sought to purchase defendant's interest in the property in accordance with Code 1975, §35-6-100 et seq.
Defendant filed a motion to dismiss, stating that he did not agree to the sale and that the property could be equitably partitioned. The trial court ruled that in an action under §35-6-100 et seq., it is unnecessary to prove that the real estate cannot be equitably partitioned.
Pursuant to Rule 5, A.R.A.P., this Court granted permission to appeal from the interlocutory order.
The issue is, can a court order the sale of jointly owned lands under the provisions of Code 1975, § 35-6-100 et seq., without proof that the lands cannot be equitably partitioned?
Traditionally, joint owners have had the right to seek a partition. The additional right of seeking a public sale was created by statute in the mid-1800's. This alternative relief arose because in many cases an equitable partition was impossible. The principal statute regarding partition and sale for division is Code 1975, § 35-6-20 et seq. Upon petition of any owner, the court is required to partition the property in kind and divide it among the owners according to their interests. But if it is determined that an equitable partition cannot be accomplished, the court will order a public sale with a division of the proceeds. In cases too numerous to recount, we have pointed out that a sale for division can take place only where there is proof that the property cannot be equitably partitioned. Furthermore, the petitioning party has the burden to plead and prove that the property cannot be equitably partitioned.
Of course, when a public sale was ordered the owners stood to lose their interests in the property. It often happened that this result was contrary to the intentions of many of the owners. The typical situation involved a "family estate" held by several heirs. Section 35-6-100 et seq. was enacted to provide a procedure whereby those owners desirous of retaining an interest in the property could do so by purchasing in a private sale the interests of those who wanted to sell.
In support of the trial court's rulings plaintiffs have characterized § 35-6-100 as a new general law relating to a distinct remedy, essentially, they say, an autonomous statute with its own procedure. According to plaintiffs:
 "A joint tenant who is desirous of having his tenancy with another dissolved and acquiring the land held in joint tenancy . . . can seek to buy out his cotenant with minimum use of judicial resources and at minimal legal cost under Ala. Code § 35-6-100, et seq., at a private sale where only he and his cotenants are buyers. Or he can seek to acquire the property under Ala. Code § 35-6-20, et seq., in the traditional manner at a public sale after a full blown trial on the issue of whether the land can be equitably divided."
Plaintiffs rely principally on five cases: Jolly v. Knopf,463 So.2d 150 (Ala. 1985); Kittrell v. Benjamin, 396 So.2d 93 (Ala. 1981); Prince v. Hunter, 388 So.2d 546 (Ala. 1980); Ragland v.Walker, 387 So.2d 184 (Ala. 1980); Hillens v. Brinsfield,108 Ala. 605, 18 So. 604 (1895).
A review of these cases does not lead us to the same conclusions which plaintiffs *Page 1083 
have reached. There is nothing in the cases cited, or in the statute, suggesting judicial economy or reduced legal costs as the reason for the legislation.
In Ragland v. Walker, 387 So.2d 184 (Ala. 1980), several owners petitioned the court for a "sale and division," asserting that equitable partition was not possible. Ragland, as a defending co-tenant, answered the complaint by maintaining that the property could be equitably partitioned and invoking §35-6-100 to purchase the interests of the petitioners. Ragland subsequently proved unable to follow through on his attempt to purchase. The court, following § 35-6-20, ordered a public sale of the property, holding that the property could not be equitably partitioned. This was done even though Ragland had maintained all along that equitable partition was feasible and notwithstanding the fact that no evidence had been introduced by either side on that point. The petitioners argued that Ragland had waived his right to object to a "sale and division" when he invoked § 35-6-100, as if Ragland had chosen one remedy to the exclusion of the other.
Before addressing the specific issue in that case, Justice Jones endeavored to present a basic understanding of the statute. While prefacing his remarks with a recognition that the statute was "inartfully drafted," Justice Jones nevertheless noted that "the purpose of its provisions is readily discernible."
Describing the ancillary nature of the procedure under §35-6-100 as it relates to the controlling provisions of the partition statute, § 35-6-20, Justice Jones wrote:
 "This amendment to the partition statute engrafts a viable option whereby [those nonconsenting parties], upon compliance with the prescribed notice, may invoke the authority of the court to purchase the interest of the petitioner. . . .
 "Admittedly, § 35-6-100 is not a model of draftsmanship. Initially, it inadvertently speaks only of `filing of any petition for a sale for division,' when obviously it means to address the procedure authorized by § 35-6-20, et seq., for partition or sale for division. . . . Furthermore, this first sentence of § 35-6-100 could be grammatically improved, and this made clearer, by setting off with commas the phrase `. . . or any others named therein who agree to the sale. . . .'
 "From a more substantive point of view, we should also observe that the amended statutory scheme is no `cure all.' . . . [For example], if less than all of the nonconsenting defendants agree to purchase the plaintiff's interest, the invocation of this statute would result only in a consolidation of certain interests which, of itself, would not avoid the subsequent operative effect of the already existing statutory procedure. Indeed, the facts of the instant case . . . [are] illustrative of this very point. The remaining nonconsenting owners could insist, first, upon partition in kind, or, failing that, upon sale for division [of] the proceeds."
Id., at 185.
We held that "the offer to buy did not constitute a waiver of rights concerning the remedy of partition. Moreover, such an offer by one defendant could not compromise the rights of others to pursue the remedy of partition." Id., at 186.
Plaintiffs maintain that § 35-6-100 does not contemplate a hearing for the determination of partitionability. In a sense this is true, but only because of the subsidiary role that this section plays in the overall scheme provided for under §35-6-20. The point to be made is that resort to § 35-6-100 doesnot preclude an owner from exercising his right to an equitable partition. It is for good reason that we have on numerous occasions referred to § 35-6-100 as an "amendment" to §35-6-20. The earlier statute governs cases of this kind generally, while the later statute provides an alternative procedure for the limited purpose of allowing joint owners an opportunity to purchase the interests of co-owners in a private sale.
In Madison v. Lambert, 399 So.2d 840 (Ala. 1981), we were again presented with *Page 1084 
an opportunity to discuss the relationship between the two statutes. We said:
 "Section 35-6-100 et seq., was ostensibly drafted to protect joint owners from being divested of their property in a coerced `public' sale by allowing them the option to purchase the filing joint owner's interest. . . .
 ". . . [N]o rights have been destroyed. The only change brought about by § 35-6-100 et seq., is the manner in which the sale is effectuated."
Id., at 842-43.
The right to equitable partition has occupied a preferred status in our law and continues to do so. Plaintiffs-appellees cannot dispossess Ralph McGee of his interest in the family estate without first proving that equitable partition is not feasible.
The judgment is hereby reversed and the cause remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, BEATTY and HOUSTON, JJ., concur.